In the Supreme Court of Georgia

Decided: September 12, 2016

S16A0852. FISHER v. THE STATE.

MELTON, Justice.

Following a jury trial, Ronald Fisher appeals his conviction for malice

murder, contending that the evidence was insufficient to support the verdict and

that trial counsel rendered ineffective assistance.[1] For the reasons set forth

below, we affirm.

---

[1] On September 23, 2011, Fisher was indicted for malice murder, felony murder, aggravated assault with a deadly weapon, and possession of a firearm during the commission of a felony in connection with the May 30, 2005 shooting of Eddie Shaheed. On May 23, 2013, the trial court dismissed the counts of aggravated assault and possession of a firearm because they were time barred. Following a jury trial beginning on September 25, 2013, Fisher was found guilty of malice murder and felony murder. The trial court sentenced Fisher to life imprisonment for malice murder, and the count of felony murder was vacated by operation of law. Malcolm v. State, 263 Ga. 369 (4) (434 SE2d 479) (1993). On October 8, 2013, Fisher filed a motion for new trial that he amended on June 22, 2015 and July 2, 2015. On October 5, 2015, the trial court denied the motion for new trial, and Fisher filed a timely notice of appeal. Thereafter, his case was docketed to the April 2016 term of this Court and submitted for decision on the briefs. We note that, in a prior opinion, this Court reversed Fisher's conviction for an unrelated murder. See Fisher v. State, Case No. S16A0515, decided July 8, 2016.

1. In the light most favorable to the verdict, the record shows that, on the afternoon of May 30, 2005, Eddie Shaheed was walking along Cascade Avenue in Atlanta with friends, including Detavious Jackson and Richard Varner. At about the same time, Fisher and his colleagues, including Darrel Horace and Ferlando Walker, arrived on scene. Both groups converged at a nearby convenience store and began conversing about various topics. Walker, however, did not stay long and walked back to the car that he, Horace, and Fisher had driven to the scene. At one point, a group of teenagers approached the convenience store, and Fisher became agitated and suspicious, asking, "What's all the mob s**t for?" Jackson attempted to diffuse the situation, but Shaheed was annoyed by Fisher's negative comment. Shaheed voiced his annoyance by saying "F**k this s**t," turned his back on Fisher, and started walking away. Fisher responded by pulling out a gun, putting it to the back of Shaheed's head, and fatally shooting Shaheed. Fisher then fired the weapon several more times as the crowd dispersed. Fisher and Horace ran back to the car in which Fisher and his group had arrived, and the group drove away. Walker saw Fisher running back to the car with a gun in his hand, and Fisher got into the back seat on the passenger's side of the car. Michael Cunningham, who had been at the

2

scene, separately saw the shooter, whom he did not know, run with the gun to the passenger side of a car matching the description of the one Fisher and his cohorts were driving. Later, Fisher explained to his friends that he shot Shaheed because he saw Shaheed reaching inside his jacket– a move Fisher found threatening– and asserting that "he wasn't going to let that happen."

At trial, Horace testified that he witnessed Fisher shoot Shaheed, and, although Walker did not witness the actual shooting, Walker testified to an identical chain of events. Jackson's testimony also supported the testimony of Horace and Walker, though Jackson was unable to unequivocally identify Fisher as the shooter. Jackson did, however, know both Horace and Walker, and he and other witnesses affirmatively placed them at the scene of the shooting. In addition, testimony indicated that Varner identified Fisher as the shooter in a photo lineup some years after the shooting occurred, though his identification was not one hundred percent certain.

This evidence was sufficient to enable the jury to find Fisher guilty of malice murder beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). Furthermore, though some of the evidence was conveyed through the testimony of co-defendants, that evidence was

3

properly corroborated. See OCGA § 24-14-8.

2. Fisher contends that trial counsel rendered ineffective assistance by introducing testimony regarding Varner's identification of him as the shooter. We disagree.

> In order to succeed on his claim of ineffective assistance, [Fisher] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. Strickland v. Washington, 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the Strickland test, the reviewing court does not have to examine the other prong. Id. at 697 (IV); Fuller v. State, 277 Ga. 505 (3) (591 SE2d 782) (2004). In reviewing the trial court's decision, "'[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" Robinson v. State, 277 Ga. 75, 76 (586 SE2d 313) (2003).

Wright v. State, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).

The record shows that the State called Sergeant Longshore and Detective Zimbrick during trial to discuss the nature of the investigation and the development of the case against Fisher. Sergeant Longshore testified that, among other witnesses, the investigation led him to Varner. Sergeant Longshore testified on direct that he showed Varner a photo lineup, but he did not testify regarding any details of the lineup. Detective Zimbrick, who ultimately took

4

over the investigation from Sergeant Longshore, also discussed the process of tracking down Fisher. He testified that he showed photo lineups to witnesses, but he did not always name who those witnesses were in a consistent fashion. He did testify that, when he resumed the investigation after a number of years had passed, he went back to interview the "original" witnesses to the crime. When asked why he secured a warrant against Fisher for the murder of Shaheed, Detective Zimbrick replied that it was "[b]ased on the witness statements and the suspect identification of the witnesses."

On cross-examination, Fisher's trial counsel began drawing into question Detective Zimbrick's characterizations of and memory concerning the statements he amassed in his investigation, highlighting, among other things, that some witnesses had actually identified another person who was in jail at the time that the crimes were committed. As part of this questioning, trial counsel decided to question Detective Zimbrick about his police report concerning a photo lineup he showed to Varner, despite the fact that Varner had not testified (and ultimately was never called by the State). Specifically, trial counsel challenged Detective Zimbrick's characterization in his report that Varner immediately identified Fisher, using the record of evidence to show that Varner

expressed some hesitation and uncertainty that he had chosen the right person. In addition, trial counsel brought out evidence that Varner explicitly questioned the reliability of his identification after he made it. In a similar manner, trial counsel questioned Detective Zimbrick's recollection of his interview with Horace, attempting to point out inconsistencies in the detective's testimony. On redirect, the State responded by playing Varner's taped statement to the jury, another argued consequence of trial counsel's alleged ineffective assistance. However, it is evident from a review of the transcript that trial counsel was attempting to draw the accuracy of Detective Zimbrick's testimony and the propriety of his investigation into question. In addition, trial counsel drew into question the accuracy of the witness identifications.

Though Varner's identification of Fisher had not been previously introduced into evidence, he had been mentioned in testimony as one of the several witnesses interviewed by police. Given this fact, trial counsel's strategy of undermining as much of the eyewitness testimony as she could, including Varner's, cannot be classified as unreasonable. Accordingly, the trial court did not err by rejecting Fisher's claim of ineffective assistance. Id.

Judgment affirmed. All the Justices concur.